# In the United States Court of Federal Claims

| | |
|---|---|
| FEDERAL PERFORMANCE MANAGEMENT SOLUTIONS, LLC, *Plaintiff,* v. THE UNITED STATES, *Defendant,* and COGNITO SYSTEMS, LLC, *Defendant-Intervenor.* | No. 23-1802C (Filed: January 3, 2024)[1] |

*David S. Black*, Holland & Knight LLP, Tysons, VA, for Plaintiff.

*Kyle S. Beckrich*, Civil Division, United States Department of Justice, Washington, DC, for Defendant.

*Todd R. Overman*, Bass Berry and Sims PLC, Washington, DC, for Defendant-Intervenor.

**OPINION AND ORDER**

**LERNER,** *Judge*.

Federal Performance Management Solutions ("FPMS") protests the Department of the Army's ("Army") denial of its bid for a contract to provide credentialing and information technology ("IT") services for Army Reserve medical providers. Compl., ECF No. 1. The Small Business Administration's ("SBA") Office of Hearings and Appeals ("OHA") determined that FPMS did not qualify as a small business and thus was ineligible for award. Compl. FPMS argues that OHA's decision reflects a misinterpretation of 13 C.F.R. § 121.103(h)—the regulation defining when a joint venture of two or more businesses may submit an offer as a small business for a federal procurement. *Id.* According to FPMS, OHA's decision is arbitrary, contrary to law, and prejudicial. *Id.*

---

[1] In accordance with the protective order entered in this case, this Opinion was filed under seal on December 20, 2023. The parties had fourteen days to propose redactions. None were proposed. Accordingly, this Court reissues this Opinion in its original form.

Before this Court are the parties' motions for judgment on the Administrative Record. Pl.'s Mot. for J. on the Admin. R. ("Pl.'s Mot."), ECF No. 28; Def.'s Resp. and Cross-Mot. for J. on the Admin. R. ("Def.'s Mot."), ECF No. 29; Intervenor's Resp. and Cross-Mot. for J. on the Admin R. ("Intervenor's Mot."), ECF No. 30.  For the reasons below, Plaintiff's Motion for Judgment on the Administrative Record is **DENIED**.  Defendant's and Defendant-Intervenor's cross-motions are **GRANTED**.

## I. Factual Background and Procedural History

### A. Regulatory Context

Under SBA's Mentor-Protégé program, approved small businesses with limited experience securing contracts ("protégés") partner with experienced contractors ("mentors") to form joint ventures ("JVs") seeking federal procurement contracts.  13 C.F.R. § 125.9(a).  The program uplifts "protégé firms by requiring approved mentors to provide [them] business development assistance."  *Id.*  The program departs from usual SBA rules governing business affiliations, and thus businesses are vetted thoroughly before their inclusion in the program.  *See* 13 C.F.R. § 121.103 (exempting small businesses that form JVs from losing their status as small by affiliating themselves with larger companies); *Straughan Env't, Inc. v. United States*, 135 Fed. Cl. 360, 364 (2017) ("The SBA has recognized an exception to this general rule regarding joint venture . . . [;] size determination is based only on the size of the small business or protégé.") (citation omitted); *SH Synergy, L.L.C. v. United States*, 165 Fed. Cl. 745, 751 (2023).

Joint ventures qualify as a small business for any procurement for which the protégé individually qualifies as small.  13 C.F.R. § 125.9(d)(iii).  Before November 2020, a JV could receive only three contract awards in a two-year period, known as the 3-in-2 Rule.  13 C.F.R. § 121.103(h) (2018).  On November 16, 2020, SBA amended the rule, and JVs may now be awarded an unlimited number of contracts within a two-year period (the Two-Year Rule).  13 C.F.R. § 121.103(h) (2020).  This change aimed to eliminate confusion and save small businesses the costs of creating new JVs to enter a fourth contract.  *See* Consolidation of Mentor-Protégé Programs and Other Government Contracting Amendments, 85 Fed. Reg. 66,148 (Oct. 16, 2020) (to be codified at 13 C.F.R.§ 121.103).

Importantly, the rule change did not impact the two-year limitation on JVs.  *Id.*  The rule change also stated that it did "not have retroactive or preemptive effect."  85 Fed. Reg. 66,176. The clock still starts on the date of the first award and lasts two years, after which point the companies must create a new JV if they wish to remain affiliated.  13 C.F.R. § 121.404(a), 103(h).

### B. The Joint Venture, Solicitation, and Award

On May 18, 2017, Apprio, Inc. ("Apprio") and PM Consulting, LLC ("PM Consulting") created FPMS, an SBA-approved mentor-protégé agreement.  AR 1289–1300, 2516, 2518, 1266–85, 2516; *see* 13 C.F.R. § 125.9.  Apprio is the mentor, and PM Consulting is the protégé. AR 1291, 2516.  Given PM Consulting's classification as "small," FPMS was eligible to bid for government contracts open only to small businesses.  *See* AR 1238; Pl.'s Mot at 7; 13 C.F.R. §§ 121.103(h)(2)(ii), 125.9(d)(1)(iii).  Shortly after forming, FPMS received its first contract award in 2018.  AR 2367.  At that time, FPMS was subject to the 3-in-2 Rule, which explicitly stated that a joint venture could "carry out no more than three specific or limited-purpose business ventures for joint profit over a two-year period."  13 C.F.R. § 121.103(h) (2018).

On May 3, 2022, the Army issued a solicitation for the award of a single firm-fixed-price contract to provide credentialing and information technology services supporting Army Reserve medical providers. AR 1–27. The solicitation was a 100% small business set-aside. AR 1. Proposals were due on June 7, 2022. AR 3. FPMS submitted its initial proposal and price on that date. AR 603. Cognito Systems—the Intervenor here—was awarded the contract in August 2022. AR 2653. FPMS protested that award to the Government Accountability Office, and FPMS received a bridge contract pending the protest. AR 1239, 2550. In response, the Army took corrective action on December 16, 2022. AR 1239. It amended its solicitation and set February 23, 2023, as a new deadline for final proposal revisions after several additional amendments. AR 580, 1239. FPMS timely submitted a revised proposal. AR 1239, 2148. On May 2, 2023, the Army sent a pre-award notice to FPMS, Cognito, and another bidder, informing them that the Army intended to award the contract to FPMS. AR 581, 583–84.

### C. Cognito Systems' Size Protest at SBA and the SBA Area Office's Decision

On May 8, 2023, Cognito filed a size protest challenging FPMS's status as a small business. AR 590, 3162. According to Cognito, a JV under the SBA's Mentor-Protégé program "cannot continue to submit proposals and receive awards 2 years after its first award." AR 601, 2517. It asserted that because FPMS is a JV and received its first contract award in September 2018, its submission for the instant procurement "is well pas[t] the allowable two-year period." *Id.* Accordingly, "FPMS is not eligible for award" of this small-business set aside procurement. *Id.*

On June 26, 2023, the SBA Area Office sustained Cognito's protest. AR 2516–22. The Area Office found that February 23, 2023—the date FPMS submitted its final proposal—was the applicable date for the instant size determination. AR 2518. However, since FPMS offered its proposal well over two years after its first contract award in September 2018, the Area Office concluded that FPMS violated 13 C.F.R. § 121.103(h), under either its previous or current version. AR 2518–22. Because Apprio and PM Consulting are affiliated, and Apprio is a large business, FPMS was not eligible for the small business set-aside procurement under the size standard. *Id.* The Area Office found "absurd" FPMS's arguments to the contrary, remarking that FPMS was essentially trying to argue it "should not be bound by the 3-in-2 Rule in effect when it received its first award." AR 3165.

### D. FPMS's Appeal to OHA

FPMS appealed to OHA. AR 3139. FPMS maintained that June 7, 2022, was the effective date for its size determination, and that the Area Office improperly used February 23, 2023, as the date of its initial proposal submission. AR 3146. FPMS also argued that the Area Office erroneously considered FPMS's September 2018 contract award in its affiliation determination, which contradicted "the plain text of the regulation." AR 3151. Thus, FPMS claimed it had not violated the regulation and should not be barred from award. AR 3149–56.

Finding "no merit" to FPMS's contentions, OHA affirmed the Area Office's decision. AR 3640–41. OHA agreed that "the Area Office erred in concluding that [FPMS's] size should be assessed as of February 23, 2023, rather than as of June 7, 2022." AR 3640. Nonetheless, such error was harmless because either date precludes FMPS's eligibility for procurement. AR 3641, 3643. In other words, FPMS "has not shown that this error on the part of the Area Office might in any way have affected the outcome of the case." AR 3640.

OHA observed that FPMS is a JV, and "there is no dispute that [FPMS] received its first contract award in September 2018." AR 3641. Under § 121.103(h), FPMS could submit offers through September 2020, "before the expiration of the two-year period." *Id.* OHA reiterated that FPMS "submitted its initial offer, including price, for the instant procurement on June 7, 2022, *more than two years after* [FPMS's] first contract award in September 2018." *Id.* (emphasis added). FPMS could not bid since it no longer qualified as a "small business." AR 3643. To allow such an award here, OHA cautioned, would evade the regulation: FPMS "could prevail on [its] appeal, then, only if OHA were to conclude that Appellant is not bound by either, or any, version of § 121.103(h), a plainly absurd and untenable result." AR 3643.

### E. FPMS's Appeal to the Court of Federal Claims

On October 13, 2023, FPMS filed a complaint in this court. Compl. FPMS moved for judgment on the Administrative Record on November 13, 2023. Pl.'s Mot. The cross-motions for judgment on the Administrative Record followed. Def.'s Mot.; Intervenor's Mot. In sum, FPMS argues that it did not violate the applicable regulation because its two-year period for submitting proposals essentially "reset" when SBA amended its rules. Pl.'s Mot at 16–18. FPMS asks this Court to conclude that OHA's decision affirming the SBA Area Office's size determination was arbitrary, capricious, and not in accordance with law. *Id.* at 18. FPMS further requests this Court "issue a permanent injunction vacating OHA's decision and directing OHA to issue a decision finding that FPMS's members are not affiliated and, therefore, FPMS is small under the size standard applicable to the Solicitation." *Id.* at 21.

## II. Jurisdiction and Standard of Review

### A. Jurisdiction

The Court of Federal Claims has jurisdiction over bid protests under the Tucker Act, 28 U.S.C. § 1491(b), and Rule 65 of the Rules of the United States Court of Federal Claims. Such protests include challenges to OHA decisions affirming an SBA area office's size determination. *Darton Innovative Tech., Inc. v. United States*, 153 Fed. Cl. 440, 450 (2021) (citations omitted). Therefore, this Court can hear claims by "an interested party objecting to a solicitation by a federal agency for bids or proposals for a proposed contract . . . or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).

### B. Standard of Review

When deciding cross-motions for judgment on the administrative record, the Court must "make factual findings from the record evidence as if it were conducting a trial on the record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1354 (Fed. Cir. 2005). "Unlike a motion for summary judgment, a genuine dispute of material fact does not preclude a judgment on the administrative record." *Sierra Nevada Corp. v. United States*, 107 Fed. Cl. 735, 751 (2012).

A protestor alleging legal error must establish a clear and prejudicial violation of applicable statutes. *Data Gen. Corp. v. Johnson,* 78 F.3d 1556, 1562 (Fed. Cir. 1996) ("[T]o prevail in a protest[,] the protester must show not only a significant error in the procurement process, but also that the error prejudiced it.") (citation omitted). The Court of Federal Claims gives "special deference" to OHA determinations due to SBA's "quasi-technical administrative expertise and [its] familiarity with the situation acquired by long experience with the intricacies inherent in a comprehensive regulatory scheme." *Swift & Staley, Inc. v. United States*, 155 Fed.

4

Cl. 630, 635 (2021) (citation omitted); *Straughan Env't, Inc.*, 135 Fed. Cl. at 372–73 (citing *LB & B Assocs. Inc. v. United States*, 68 Fed. Cl. 765, 771 (2005)). Deference, though, is inappropriate when the agency's interpretation is "plainly erroneous or inconsistent with the regulation." *Swift & Staley, Inc.*, 155 Fed. Cl. at 635 (citing *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012)). The question then, is whether OHA's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(a)(2); *Bannum*, 404 F.3d at 1351.

### III. Discussion

#### A. SBA Properly Applied its Regulation.

FPMS maintains that SBA's determination that it is not an eligible JV for this procurement contradicts the amended 13 C.F.R. § 121.103(h) by impermissibly applying the regulation retroactively. Pl.'s Mot at 18. However, a plain reading of the regulation and its underlying purpose demonstrate that SBA did not impermissibly apply its regulation. FPMS ascribes much weight to the change in the number of contracts permitted (i.e., switching from the 3-in-2 Rule to the Two-Year Rule). *See* Pl.'s Mot. at 12–20. Plaintiff fails to acknowledge that in *both* the new and old version, JVs have only two years to enter contracts. *Compare* 13 C.F.R. § 121.103(h) (2018) (JVs are limited to a "two year period") *with* 13 C.F.R. § 121.103(h) (2020) (same). Joint ventures are limited business entities, a fact which FPMS concedes. Pl.'s Mot. at 5 ("[A] JV should be limited in nature, rather than a continuing or permanent business entity."). The regulation itself explicitly defines a JV as an association born out of convenience "but *not on a continuing or permanent basis* for conducting business generally." 13 C.F.R. § 121.103(h) (emphasis added).

The 2020 change to 13 C.F.R. § 121.103(h) did not impact the two-year limitation. The amendment only impacted *how many* contracts a JV could be awarded within those two years. *See* 85 Fed. Reg. 66,148 (Oct. 16, 2020) ("The proposed rule sought to eliminate the three-contract limit for a joint venture, but continue[d] to prescribe that a joint venture cannot exceed two years from the date of its first award."). Indeed, SBA noted that "allowing a joint venture to operate as an independent business entity for more than two years erodes the limited purpose and duration requirements of a joint venture." *Id.*

In explaining the reasoning for the rule change, SBA clarified that the expansion of the number of contracts served to "reduce the burden of small businesses being required to form additional joint venture entities to perform a fourth contract" but still emphasized that these contracts must occur "within that two-year period." *Id.* at 66,172. *See also* Joshua A. Mullen, Significant Amendments Consolidating SBA's Mentor-Protégé Programs and Revising SBA's Size Regulations Now in Effect, Westlaw J. Gov't Cont., Vol. 34, 18, at 4 ("In its comments about this change, the SBA confirmed that it still believes that a two-year rule is necessary because a joint venture is intended for a limited purpose and duration, but the SBA eliminated the three award limit."); Daniel H. Ramish, Big Changes in Small Business Regulations: Recent Rule Changes and Their Effect on Contractors, Procurement Law., Winter 2021, 3, at 4–5 ("The Final Rule simplifies the JV general affiliation test by eliminating the three-contract limit without changing either the two-year duration or the ability of firms to form multiple joint ventures."). In short, JVs are, and have always been since FPMS's first contract award, limited to two years.

Here, there is no dispute that FPMS received its first contract on September 19, 2018. *See* Pl.'s Mot. at 7 ("FPMS's first contract award was . . . received on September 19, 2018."); Def.'s Mot. at 11; Intervenor's Mot. at 2. It therefore had two years—until September 19, 2020—to submit additional offers and remain unaffiliated. FPMS submitted its offer on June 7, 2022, long after the two-year period had lapsed. *See* AR 3164. To allow JVs to operate beyond this two-year limit "would be to ignore what a joint venture is intended to do." 85 Fed. Reg. 66,148 (Oct. 16, 2020); 13 C.F.R. § 121.103(h).

A mechanism exists for a JV to renew its status beyond the designated two-year period. Entities seeking to extend their joint venture can simply create a new JV. "If the parties intend to jointly seek work beyond two years from the date of the first award, the regulations allow them to form a new joint venture." 85 Fed. Reg. 66,148 (Oct. 16, 2020). Thus, FPMS is not precluded from continuing its affiliation with Aprio; it simply needs to form a new JV.

As SBA notes, the revision of 13 C.F.R. § 121.103(h) "does not have retroactive or preemptive effect." 85 Fed. Reg. 66,176. FPMS rests its entire argument on these words, claiming that OHA should not have retroactively applied the Two-Year Rule to FPMS's September 2018 contract award. *See* Pl.'s Mot. at 14–20. But the retroactive effect contemplated in the rule change bears no resemblance to the "impermissible retroactivity" alleged by FPMS.

First, for an impermissible retroactive application to exist, a party must be divested of a right it once had. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 (1994) (stating that a retroactive application "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past") (citation omitted); *Kearfott Guidance & Navigation Corp. v. Rumsfeld*, 320 F.3d 1369, 1375 (Fed. Cir. 2003) (finding no impermissible retroactive application when the "FAR [did not] impose any new obligation, duty, or disability with respect to a transaction previously entered into by [plaintiff]"). Here, the regulatory change did not divest FPMS of any rights. To the contrary, the amended regulation made it easier for JVs to submit additional proposals.

Second, beginning with its initial contract award in September 2018, FPMS agreed—or at least reasonably should have known—that it was bound by the regulation in effect: the 3-in-2 Rule. *E.g.*, *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385 (1947). SBA's statement that the amendments do "not have retroactive" effect means, as noted by the Government, that the change "does not apply to procurements in which offers were made prior to the regulation's amendment." Def.'s Mot. at 15. In other words, the amended regulations do not apply to JVs that received a contract under the 3-in-2 Rule. Joint ventures awarded contracts under the 3-in-2 Rule could not reap the benefits of the new rule change, and, most significantly here, were still limited to two years. Adopting FPMS's position would essentially mean that every JV which received an award under the old rule would be similarly eligible for another two years. Again, such a position conflicts with the two-year limit. And there is no support for FPMS's argument that in amending the regulation SBA intended to provide every joint venture a fresh two-year clock.

FPMS further suggests that by amending the rules, SBA repealed or replaced the old rule, and therefore the two-year clock should start anew. *See* Pl.'s Mot. at 2, 5, 13, 20. However, that interpretation would allow joint ventures to restart their clock anytime a rule is modified or

6

changed, lurching along in perpetuity. This contradicts the plain language of the rule and fundamental purpose of a JV. *See, e.g.*, 13 C.F.R. § 121.103(h) ("A joint venture is an association of individuals and/or concerns with interests in any degree or proportion intending to engage in and carry out business ventures for joint profit over a two-year period . . ."); 85 Fed. Reg. 66,148 (Oct. 16, 2020) ("SBA believes that allowing a joint venture to operate as an independent business entity for more than two years erodes the limited purpose and duration requirements of a joint venture.").

To conclude, FPMS's June 2022 proposal exceeds JVs' two-year limit. The retroactive effect contemplated by the rule change applied only to the number of contracts awarded, not the limited duration of a JV. Accordingly, OHA's decision affirming the Area Office's size determination was not arbitrary, capricious, or contrary to law.

### B. FPMS Is Not Entitled to Injunctive Relief.

To warrant permanent injunctive relief, a plaintiff must establish each of four factors:

(1) whether, as it must, the plaintiff has succeeded on the merits of the case;

(2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief;

(3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and

(4) whether it is in the public interest to grant injunctive relief.

*PGBA, L.L.C. v. United States*, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004) (citations omitted). Because FPMS has not succeeded on the merits, the Court denies FPMS's request for a permanent injunction.

### IV.   Conclusion

For the foregoing reasons, Plaintiff's Motion for Judgment on the Administrative Record is **DENIED**. Defendant's Cross-Motion for Judgment on the Administrative Record is **GRANTED**. Intervenor's Cross-Motion for Judgment on the Administrative Record is similarly **GRANTED**. The Court directs the Clerk of the Court to enter judgment accordingly.

**IT IS SO ORDERED.**

    s/ Carolyn N. Lerner
CAROLYN N. LERNER
Judge